

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Frank D. Quinn,
Executive Secretary
Texas State Parks Board
Austin, Texas

Dear Mr. Quinn:

Opinion No. O-4501

Re: Whether or not the Texas State
Parks Board may dispose of ac-
cumulated scrap material, iron,
junk machinery, etc., and de-
posit the proceeds in the
Special Park Fund.

Your letter of inquiry, dated March 25, 1942, is as
follows:

"For the past eight years, the Texas State
Parks Board has accumulated throughout the
State a good bit of scrap material, iron, junk
machinery, etc., which we are new gathering up
with the idea of making disposal to some agency
to be used in the National Defense program.

"While we would probably be willing to do-
nate this scrap material direct to any Govern-
mental Agency that could use it, we do not feel
it should be donated to the junk dealers who,
in turn, would be able to dispose of it at a
price.

"We would like to have a ruling from you as
to how this should be handled and whether or not
the funds received from the sale of this scrap
material can be deposited to our special fund or
must it be deposited to the General Fund. We,
of course, would like very much to be able to use
this money in the Special Park Fund -- as it would
only compensate us for the expense and trouble of
gathering it up.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Most of the material which we have was left with us as surplus by the National Parks Service and not originally purchased with State Funds."

The junk material mentioned by you is public property belonging to the State, and your Board, therefore, has no authority to donate the same to junk dealers or to any other person. The Board is not clothed with any such power. Governmental agencies have only those powers that are conferred upon them by the law creating them.

Article 6070a, of Vernon's Codification of the statutes, authorizes the Board to grant concessions and to make concession contracts in connection with State park sites, and declares:

"The revenues thus earned by the State Parks Board shall when collected be placed in the State treasury."

It further provides that "funds and revenue derived under the provisions of the act and deposited in the State treasury shall be deposited in a special fund to be known as the 'State Parks Fund.'"

There appears to be no provision authorizing the Board to dispose of unused or scrap material, such as you mention, so that the proceeds thereof could in any event be considered revenue, within the meaning of the special fund thus provided for.

Article 665 of the Revised Statutes declares:

"The State Board of Control shall have charge and control of all public buildings, grounds and property of the State, and is the custodian of all public personal property, and is charged with the responsibility to properly care for and protect such property from damage, intrusion or improper usage. * * *."

We are of the opinion this statute, in the absence of a more specific provision, is sufficient to authorize the Board of Control to make sale of property, such as you describe, if in the sound judgment of the Board it seems neces-

sary to protect the State or preserve the property damage.

It will be seen the statute does not stop with making the Board of Control the custodian of all public, personal property, but it goes further and affirmatively imposes upon the Board the responsibility to properly care for and protect such property from damage. It may be, ordinarily, that a mere custodian or bailee with respect to property would not have such power as we have just indicated, for he would be clothed with no other power, and charged with no other duty but to safely keep and redeliver the very property intrusted to his custody. But not so here, where the property is of such nature that it deteriorates -- suffers damage -- necessarily resulting in loss to the State, and the only way in which such damage may be avoided, or at least a most reasonable way, would be to sell the property where it has a market.

We do not mean to say the Board has the broad power of discretion to sell personal property belonging to the State in the custody of the Board, merely because such property is not presently needed, but we mean to say that such power of sale should be exercised only where the particular circumstances surrounding the matter would show to the Board, in the exercise of a sound business and official discretion, that such procedure was necessary to prevent damage or waste in respect to the property. We know that junk material exposed to the elements is in process of waste and ultimate destruction precisely as perishable fruits, vegetables, and the like, are perishable, as of course.

Where this power of sale is exercised by the Board of Control it is not in virtue of any specific statute, prescribing the method or manner of sale, but, on the contrary, it is in virtue of the express general power to protect against damage, and therefore the sale when necessary may be made by the Board in such manner, at such time and at such place or places, and upon such price as to the Board may seem just and reasonable. This is incidental to the main power conferred.

438

You are therefore advised that this is the proper way to handle such property.

APPROVED APR 16, 1942          Very truly yours

FIRST ASSISTANT          ATTORNEY GENERAL OF TEXAS
ATTORNEY GENERAL

                          By

                          Ocie Speer
                          Assistant

OS-MR

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE